Submitted September 28, affirmed November 12, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JONTAE JOVAN JONES,
aka Johnte Jovan Jones,
aka Johntae Jovan Howard,
*Defendant-Appellant.*

Multnomah County Circuit Court
130431618; A156249

362 P3d 899

Peter Gartlan, Chief Defender, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Nakamoto, Judge, and Tookey, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Following a bench trial, defendant was convicted of two counts of unlawful use of a weapon. ORS 166.220. On appeal from the resulting judgment, defendant raises two assignments of error. In his first assignment, he contends that the trial court erred when it excluded evidence that a victim who testified in the case had been convicted of second-degree failure to appear. In his second assignment, defendant asserts that, because the two convictions arose from the same transaction, the trial court erred in reconstituting his criminal history score on his second conviction for unlawful use of a weapon. The state concedes that the trial court erred in both respects, but asserts that both errors were harmless. We agree with the state and, accordingly, we affirm.

The background facts of this case are as follows. One evening in April 2013, defendant approached two brothers, Carter and Pratcher, near a TriMet MAX platform in Portland. Carter knew defendant; the two were members of rival gangs. Defendant pulled a handgun from his pants and pointed it at the victims, who ran away. As they did so, defendant fired several shots.

After reporting the incident to the police, both victims identified defendant in a police photo array. An officer who was familiar with defendant also identified him from surveillance videos taken on the MAX platform. Later that night, police saw a vehicle that they believed was occupied by defendant. When officers attempted a traffic stop of the vehicle, it did not stop and a high speed chase ensued. During the chase, the car slowed and the passenger opened the passenger side door and threw a gun from the vehicle. The car then continued on; the officers' pursuit ended when the vehicle crashed into the front yard of a residence. At that point, the driver of the vehicle jumped out and ran. The officers arrested defendant, who had been the passenger in the vehicle.

The gun that had been thrown from the car during the chase was subsequently recovered and identified to be the same gun as had been used in the earlier shooting. Shell casings from the gun were recovered from the location of

the shooting. Defendant's DNA, along with DNA from three other individuals, was found on the gun handle.

Defendant was charged with two counts of attempted aggravated murder with a firearm, two counts of attempted murder with a firearm, two counts of attempted first-degree assault with a firearm, and two counts of unlawful use of a weapon with a firearm. He waived his right to a jury trial, and the case was tried to the court. Defendant stipulated that he was the person shown in surveillance videos taken at the MAX station.

Both of the victims, who had been arrested as material witnesses in the case, testified at trial. Carter, who knew defendant prior to the events at issue, testified that, as he and his brother approached the MAX station on the night in question, they "ran into" defendant. According to Carter, defendant, who was alone, stopped, said something to Carter, and then "pulled out his gun and started shooting." Pratcher testified that he had seen defendant before the shooting, but did not know who he was. Like Carter, Pratcher testified that defendant was alone, and that, after encountering Carter and Pratcher, defendant had shot a gun at them. After the shots were fired, Pratcher called 9-1-1; a recording of the call was entered into evidence.

During Pratcher's testimony, defendant sought to introduce evidence that, several years before, Pratcher had been convicted of second-degree failure to appear, a misdemeanor. The court, however, sustained the state's objection to the introduction of that evidence.

The state also presented testimony of officers who had arrived on the scene of the shooting, the detective who oversaw the investigation, criminalists who collected evidence in the case, officers who were involved in the high speed chase and the arrest of defendant, and forensic scientists who worked with the evidence collected. Photographs of the scene of the shooting, the victims on the night of the shooting, clothing and other items worn by defendant when he was arrested, and a diagram of the scene were introduced into evidence. The MAX platform videos, still photographs taken from the MAX platform videos, and surveillance video taken from an apartment complex across the street from the

MAX station were also introduced. The state also submitted the gun, shell casings, and defendant's shoes and watch. During examination of the state's witnesses, defendant submitted three exhibits: one enlarged still photograph from the MAX station surveillance videos and two photographs of hats. However, after the state rested, defendant did not present any additional testimony or other evidence.

After the presentation of the evidence, the court noted that it intended to watch the videos "several times" in considering the case. Similarly, in announcing its verdict, the court stated that it had "spent time * * * going over," among other things, "the video and exhibits." The court concluded that the state had proved that defendant had shot the gun as alleged and found him guilty of two counts of unlawful use of a weapon (Counts 7 and 8). However, the court determined that the state had not proved the intent required for the remaining charges, and, accordingly, acquitted defendant of the attempted aggravated murder, attempted murder, and attempted assault charges.

On appeal, defendant contends that the court erred when it excluded evidence of Pratcher's conviction for second-degree failure to appear. According to defendant, that conviction was admissible for impeachment purposes under OEC 609 because it involves a false statement or dishonesty.[1] Citing Laird C. Kirkpatrick, *Oregon Evidence* § 609.02 (6th ed 2013), the state acknowledges that failure to appear is a crime that involves false statement by its very nature and concedes that "the trial court ruled incorrectly" when it excluded the evidence of Pratcher's failure-to-appear conviction. The state asserts, however, that the trial court's error was harmless. We agree with the state.

Under Article VII (Amended), section 3, of the Oregon Constitution, a reviewing court must affirm a judgment

---

[1] Pursuant to OEC 609(1),

"[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the crime:

"(a) Was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; or

"(b) Involved false statement or dishonesty."

"notwithstanding any error committed during the trial" if the court concludes that "the judgment appealed from was such as should have been rendered in the case[.]" Under that provision, we must affirm a defendant's conviction despite evidentiary error if "there [is] little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). With respect to the erroneous exclusion of impeachment evidence, a trial court's error is harmless if either: "(1) despite the exclusion, the [factfinder] nonetheless had an adequate opportunity to assess [the witness's] credibility; or (2) [the witness's] credibility was not important to the outcome of the trial." *State v. Titus*, 328 Or 475, 482, 982 P2d 1133 (1999).

Here, in light of the other evidence presented, the erroneous exclusion of Pratcher's conviction for second-degree failure to appear had little likelihood of affecting the verdict. We begin by noting that, to establish that defendant committed the crime of unlawful use of a weapon in this case, the state had to demonstrate that defendant intentionally discharged a firearm within the city limits of a city or within residential areas within an urban growth boundary or in the direction of a person without having legal authority for such discharge. *See* ORS 166.220(1)(b). Pratcher's testimony that defendant had drawn a gun and shot it related to those elements. However, his credibility was not important to the outcome of the trial on those charges in this case. This case was not a swearing match, and its outcome did not turn on the court concluding that Pratcher's testimony was credible. *Cf. State v. Thomas*, 257 Or App 770, 775, 308 P3d 270 (2013) (trial court's error in excluding impeachment evidence that may "have undercut the credibility of the state's chief witness against defendant likely affected the verdict"); *State v. Lopez*, 241 Or App 670, 680, 250 P3d 984 (2011) (improper admission of the defendant's prior conviction was not harmless where the case was essentially a swearing match).

In addition to Pratcher's testimony, the state presented testimony from Carter, who knew defendant prior to the events at issue, that established the same facts to which Pratcher had testified: While near a MAX station in Portland, defendant drew a gun and shot it. The state also

presented extensive evidence corroborating that testimony. Officers recovered shell casings at the scene of the shooting that were confirmed to have been shot from the gun discarded by defendant during the high speed chase with police later that night. Defendant's DNA was found on the handle of the gun used in the shooting. Importantly, surveillance video evidence corroborated Carter and Pratcher's account of the shooting. Indeed, that corroborating evidence appears to have been important to the court, which noted that, in reaching its verdict, it went over the videos and exhibits submitted in evidence. Based on Carter's testimony, along with all of the other evidence supporting defendant's convictions, we conclude that the erroneous exclusion of the impeachment evidence concerning Pratcher was not likely to have affected the outcome of the trial in this case. Accordingly, we agree with the state that the trial court's error in that respect was harmless.

In a second assignment of error, defendant asserts that the trial court committed an error during sentencing. At sentencing, the court classified defendant's conviction on Count 7 as a 6B under the sentencing guidelines and imposed a 60-month gun minimum sentence under ORS 161.610.[2] With respect to Count 8, the court classified defendant as a 6A on the sentencing guidelines and sentenced him to 25 months, concurrent to the sentence on Count 7, followed by 24 months of post-prison supervision.[3] Defendant contends that the trial court erred "when it reconstituted [his] criminal history score." In his view, because the two convictions in this case arose from the "same transaction or series of

---

[2] ORS 161.610(4) provides, in part:

"The minimum terms of imprisonment for felonies having as an element the defendant's use or threatened use of a firearm in the commission of a crime shall be as follows:

"(a) Except as provided in subsection (5) of this section, upon the first conviction for such felony, five years, except that if the firearm is a machine gun, short-barreled rifle, short-barreled shotgun or is equipped with a firearms silencer, the term of imprisonment shall be 10 years."

[3] Under OAR 213-004-0007, a criminal history category of "B" means that the "offender's criminal history includes two person felonies in any combination of adult convictions or juvenile adjudications." A criminal history category of "A" means that the "offender's criminal history includes three or more person felonies in any combination of adult convictions or juvenile adjudications." *Id.*

specifically connected transactions," *State v. Bucholz*, 317 Or 309, 315, 855 P2d 1100 (1993), the court erred in using his conviction on Count 7 to elevate his criminal history score for Count 8. *See State v. Witherspoon*, 250 Or App 316, 321, 280 P3d 1004 (2012) ("[W]hen a defendant's multiple convictions stem from the same criminal episode, his criminal history score remains the same with respect to all of those convictions." (Internal quotation marks omitted.)). The state concedes that, "because the two convictions arose from the same criminal conduct or transaction, the court was not permitted to recalculate the criminal history score." Nonetheless, the state asserts that the court's error is, again, harmless. We agree.

Here, as noted, the court imposed a lawful sentence of 60 months on Count 7. In imposing its sentence, the court emphasized defendant's involvement in gangs and violence, noting that, in light of the circumstances of the crimes of conviction, defendant was "very lucky not to be going away for the rest of [his] life." It also made defendant eligible for alternative incarceration programs, stating that "[i]t's going to be up to the Department of Corrections as to what programming will be provided and you'll have to * * * behave in prison if you're going to be made eligible for any of those programs[.]" The court then stated that, for Count 8, it would classify defendant as a 6A on the sentencing guidelines grid and would impose 25 months of imprisonment, concurrent with the 60 months imposed on Count 7. After the court announced that sentence, defendant's counsel objected to the classification of defendant's criminal history for Count 8 as a 6A, but stated that any error was likely harmless.

First, the erroneous sentence imposed in this case "will run concurrently with other longer and lawful sentences." *State v. Diaz-Guillen*, 245 Or App 110, 117, 261 P3d 80 (2011). Specifically, the erroneous 25-month sentence runs concurrently with the longer lawful 60-month sentence on Count 7. Furthermore, we are unpersuaded by defendant's suggestion that the trial court may have adopted a lighter sentence on Count 7 but for its error on Count 8. The court's sentence on Count 7 was a gun minimum imposed under ORS 161.610(4)(a) and, to depart from that minimum under ORS 161.610(5), the court would have had to expressly find

"mitigating circumstances justifying [a] lesser sentence" and set forth those mitigating circumstances in its statements at sentencing. Here, the court's statements at sentencing related to the imposition of the 60-month gun minimum persuade us that its later error in determining defendant's criminal history score on Count 8 had no effect on the sentence for Count 7. *See State v. Powell*, 253 Or App 185, 192, 288 P3d 999 (2012), *rev den*, 353 Or 714 (2013) (affirming despite sentencing error where remand "would not have the potential to improve defendant's position"). Nor has defendant identified any other adverse consequences of the trial court's error. *See State v. Tremillion*, 111 Or App 375, 376, 826 P2d 95, *rev den*, 313 Or 300 (1992) (affirming despite conceded sentencing error where error did not affect period of imprisonment and did not result in any adverse consequences). Accordingly, we conclude that the error had no practical effect on defendant and was, therefore, harmless.

Affirmed.