Argued and submitted September 2, 2021, affirmed February 24, petition for review denied July 7, 2022 (370 Or 56)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID KIF DAVIS,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR01993; A172180

505 P3d 1057

Defendant appeals from a judgment of conviction for criminal trespass in the second degree, ORS 164.245, and criminal mischief in the third degree, ORS 164.345. He assigns error to the trial court's decision to quash his subpoena *duces tecum* for the use-of-force policy for G4S, a private security company, and his subpoenas *duces tecum* for the mayor and other members of Portland City Council to appear as witnesses and bring identified documents with them. *Held*: The trial court erred when it quashed the subpoena for the G4S use-of-force policy because that policy had a potential use for cross-examination to show the bias of G4S witnesses and to generally undermine their credibility. However, that error was harmless, because other evidence of the bias of G4S witnesses was presented to the jury and video of all the events in question was submitted into evidence. With regard to the subpoenas for the testimony of the mayor and city council members, the trial court did not err, because defendant's theory as to the relevance of their testimony was too speculative.

Affirmed.

Andrew M. Lavin, Judge.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals from a judgment of conviction for criminal trespass in the second degree, ORS 164.245, and criminal mischief in the third degree, ORS 164.345. He assigns error to the trial court's decision to quash his subpoena *duces tecum* for the use-of-force policy for G4S, a private security company, and his subpoenas *duces tecum* for the mayor and other members of Portland City Council to appear as witnesses and bring identified documents with them. We conclude that the trial court erred when it quashed the subpoena for the G4S use-of-force policy, but that that error was harmless. Additionally, we conclude that the trial court did not err when it quashed the subpoenas for the mayor and the other members of city council. We therefore affirm.

In 2019, defendant attended a Portland City Council meeting and recorded the proceedings. There was a bright light on his camera and a G4S security officer approached defendant and asked him to turn his light off. Defendant refused and walked away from the G4S security officer, who followed. While this was happening, another member of the public started yelling about the security officer interacting with defendant. The mayor announced a recess, and G4S, in consultation with city employee Dorothy Elmore, gave the order to clear council chambers. Defendant refused to leave and was eventually pulled out of the room by security officers. During that interaction defendant received a cut to his hand, and he proceeded to smear his blood on the wall. He was arrested and charged with criminal trespass in the second degree (ORS 164.245); criminal mischief in the second degree (ORS 164.354); and criminal mischief in the third degree (ORS 164.345).

Defendant issued six subpoenas *duces tecum* for his trial: one for G4S's use-of-force policy, and five for the mayor and the remaining members of city council to appear as witnesses and bring identified documents. The defense theory at trial was that defendant was engaged in protected constitutional activity and thus the order to exclude him was unlawful. Defendant argued that the policy could be used to impeach the G4S officers' testimony regarding what

happened and show that they were hostile to him personally. In support of his subpoenas for the mayor and city council, defendant contended that their testimony could bolster his theory that G4S and city council were biased against him and that the G4S security officer approached him not because of the light but because of the content of his speech. G4S and the City of Portland moved to quash those subpoenas, and the trial court granted the motions to quash, stating that the proposed relevance of the policy and testimony was too speculative. Defendant was found guilty of criminal trespass in the second degree and criminal mischief in the third degree. Defendant timely appealed, contending that the trial court's decision to quash his subpoenas *duces tecum* violated his statutory and constitutional rights to compulsory process.

We begin with the trial court's decision to quash defendant's subpoena for the use-of-force policy and address only the statutory right, as it is dispositive. We review whether a defendant's right to compulsory process has been violated for legal error. *State v. Cartwright*, 336 Or 408, 419-20, 85 P3d 305 (2004) (applying that standard for statutory arguments under ORS 136.567 and ORS 136.580).

A defendant's entitlement to issue subpoenas for documents and testimony is provided by ORS 136.567 and ORS 136.580.[1] There is no statutory provision that authorizes a motion to quash a subpoena in a criminal case. *Cartwright*, 336 Or at 417. Accordingly, the ability to rule on motions to quash stems from a court's inherent authority, but that authority "cannot permit trial courts to violate a

---

[1] ORS 136.567(1) provides:

"A defendant in a criminal action is entitled, at the expense of the state or city, to have subpoenas issued for not to exceed 10 witnesses within the state. A defendant is entitled, at the expense of the defendant, to have subpoenas issued for any number of additional witnesses without an order of the court. The defendant is responsible for the costs of serving the subpoenas and for the costs, as provided in ORS 136.602, of witness per diem and mileage and for expenses allowed under ORS 136.603."

ORS 136.580(1) provides:

"If books, papers or documents are required, a direction to the following effect shall be added to the form provided in ORS 136.575: 'And you are required, also, to bring with you the following: (describing intelligibly the books, papers or documents required).'"

criminal defendant's broad right under the subpoena statutes to compel witnesses to attend his or her trial (and to bring along any books, papers or documents that the defendant has identified in the subpoena)." *Id.* (internal quotation marks omitted).

In addition to witness privacy concerns, two conceptual limitations bear on a witness's duty to accommodate a defendant's right to compel the production of evidence: relevance and privilege. *State v. Bray*, 281 Or App 584, 608, 612, 383 P3d 883 (2016), *aff'd*, 363 Or 226, 422 P3d 250 (2018). "[W]hen a party subpoenas a witness to produce material for cross-examination at trial, ORS 136.580 requires a court to order the production of the material unless it is clear that the material has *no potential use* for that purpose." *State v. Bray*, 363 Or 226, 247-48, 422 P3d 250 (2018) (internal quotation marks omitted; emphasis added).

Defendant argues that the trial court erred because the use-of-force policy had a potential use for impeachment purposes. At the motion to quash hearing, defendant argued that the policy itself was relevant to show bias if the security officers used force that was not consistent with the policy. The representative for G4S responded that the charges of criminal trespass and criminal mischief had nothing to do with the actions of G4S, and even if the policy was useful to show bias, that bias would not be relevant to the elements of those crimes.

"To be relevant, evidence introduced to impeach a witness for bias or interest need only have a *mere tendency* to show the bias or interest of the witness." *State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984) (emphasis added). A court should afford a party "wide discretion in cross-examination to demonstrate such bias." *State v. Rashad*, 310 Or App 112, 113, 483 P3d 1223 (2021) (internal quotation marks omitted). However, when evaluating the relevance of evidence meant to show bias, there must be more than mere speculation. *See State v. Phillips*, 245 Or App 38, 46, 261 P3d 55 (2011), *rev den*, 351 Or 545 (2012) (stating that "reasonable inferences are permissible but 'speculation *** is not'" (quoting *State v. Harberts*, 198 Or App 546, 561, 108 P3d 1201 (2005), *rev den*, 341 Or 80 (2006)) (ellipsis in *Phillips*).

The use-of-force policy was relevant to show the bias of G4S witnesses and generally undermine the credibility of their testimony at trial. *See* OEC 609-1 ("The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest."). It is undisputed that G4S used force to remove defendant from council chambers, force that caused a minor injury to his hand. Defendant intended to use the policy to cross-examine the multiple G4S personnel on the state's witness list. Because the policy might show that G4S's use of force was inconsistent with the policy, that policy had a "mere tendency" to demonstrate that G4S officers were biased against defendant and thus undermine their credibility. *Hubbard*, 297 Or at 796.[2] Given that the use-of-force policy had a nonspeculative potential use for impeachment during cross-examination of the witnesses from G4S, the trial court erred in quashing the subpoena.

The state argues that the trial court did not err because defendant's theory of relevance relied on a string of inferences which was too tenuous to support the potential use of the policy. However, for purposes of impeachment evidence, a trial court cannot "predict, with certainty, in advance of that witness's testimony, whether the subpoenaed material will in fact be relevant and admissible." *Bray*, 363 Or at 251. "When a party uses a subpoena *duces tecum* to compel production of materials for cross-examination at trial, the court has control over those materials and will have an opportunity to make the more exacting determinations necessary to their admissibility." *Id*.

Having determined that the trial court erred when it quashed the subpoena for the use-of-force policy, we must determine whether that error was harmless; that is, whether there was little likelihood that the particular error affected the verdict. *State v. Hightower*, 368 Or 378, 386, 491 P3d 769 (2021). In making that determination, we look at all the evidence in the record and "we consider the importance of

---

[2] To the extent that defendant is arguing alternatively that the use-of-force policy would be relevant because the G4S officers might testify in a manner that was inconsistent with that policy, that is unduly speculative. Under that reasoning, any document delineating a policy would be relevant in the event that a witness testified inconsistently with that policy.

the erroneously admitted evidence to a party's theory of the case." *State v. Stewart*, 270 Or App 333, 341, 347 P3d 1060, *rev den*, 357 Or 743 (2015); *see State v. Mendoza-Sanchez*, 291 Or App 299, 313, 419 P3d 765 (2018) (when making a harmless error determination "we review all pertinent portions of the record"). For purposes of a general attack on witness credibility under OEC 609-1, an erroneous decision to exclude evidence relevant to bias is reversible "if it denies the jury an adequate opportunity to assess the credibility of a witness whose credibility is important to the outcome of the trial." *Hubbard*, 297 Or at 800. Thus, "a trial court's error is harmless if either: '(1) despite the exclusion, the [factfinder] nonetheless had an adequate opportunity to assess [the witness's] credibility; or (2) [the witness's] credibility was not important to the outcome of the trial.'" *State v. Jones*, 274 Or App 723, 728, 362 P3d 899 (2015) (quoting *State v. Titus*, 328 Or 475, 482, 982 P2d 1133 (1999) (brackets in *Jones*)).

The error in this case was harmless for both reasons: The evidence was cumulative of other evidence of bias toward defendant personally,[3] and credibility was not a core issue in the case. First, the jury heard other evidence supporting defendant's theory that the security officers were biased against him. *See State v. Jasperse*, 310 Or App 703, 711, 487 P3d 402, *rev den*, 368 Or 787 (2021) ("The erroneous exclusion of evidence that is merely cumulative of admitted evidence and not qualitatively different from admitted evidence is generally harmless." (Internal quotation marks omitted.)). Three G4S security personnel were cross-examined on their prior interactions with defendant and all acknowledged that they had seen him before on more than one occasion. The G4S employee who gave the order to clear chambers acknowledged that she had previously ejected defendant from City Hall. Defendant also called as a witness another member of the public who was present at city

---

[3] On appeal defendant appears to raise the argument that evidence of a possible policy violation would have tended to show that G4S had a motive to lie in order to cover up that violation, citing *State v. Crum*, 287 Or App 541, 551, 403 P3d 405 (2017). The state responds that that argument is unpreserved. After reviewing the record, we agree that this argument for relevance was not raised before the trial court, and we decline to address it on appeal. ORAP 5.45(1).

council that day, who testified that G4S officers were biased against defendant based on what he had observed during prior interactions.

Moreover, undermining the credibility of the G4S witnesses would have had little impact on the verdict given that defendant's interactions with G4S personnel before, during, and after the meeting were on video and presented to the jury. That video included G4S's efforts to physically remove defendant from council chambers and the jury could see defendant's actions for itself in determining whether he committed the offenses. *Cf. State v. Crum*, 287 Or App 541, 555, 403 P3d 405 (2017) (exclusion of evidence of officer's bias was not harmless when the case hinged on the outcome of a dispute over whether the defendant raised a rifle during the confrontation). Additionally, the state called as a witness Dorothy Elmore, who was not employed by G4S and worked as a security manager for the City of Portland. She testified to her personal observations of defendant's actions on the day and her role in the decision to clear city council chambers. The use-of-force policy would have had no effect on impeaching her testimony, which corroborated the testimony given by the G4S officers. *Cf. Hubbard*, 297 Or at 800-01 (holding that exclusion of bias evidence is not harmless where "the impeached witness [was] the sole witness on a given issue and there [was] no corroborating evidence").[4]

Because other evidence of the witnesses' bias was presented to the jury, the verdict did not depend on credibility, and defendant is not contending that the deprivation of the policy denied him the opportunity to obtain additional evidence that he could present at trial, the trial court's error in quashing the subpoena *duces tecum* for the G4S use-of-force policy was harmless. *See Jasperse*, 310 Or App at 711 (concluding that in order to reverse a conviction based on

---

[4] Defendant clarifies in his reply brief that he does not now contend that the bias of G4S undermines the validity of the order to clear chambers, rather that it undermines their credibility as witnesses. *See State v. White*, 211 Or App 210, 215, 154 P3d 124, *adh'd to as clarified on recons*, 213 Or App 584, 162 P3d 336, *rev den*, 343 Or 224 (2007) (stating that the lawfulness of the order to leave the premises is an essential element of criminal trespass in the second degree).

evidentiary error there needs to be "some likelihood that the challenged evidence affected the verdict").[5]

Moving to defendant's subpoenas *duces tecum* for the members of city council, defendant argues that a court's authority to quash a subpoena cannot infringe on a defendant's statutory and constitutional rights to compel witnesses to attend his trial. He argues that city council recessed the meeting due to the content of his speech, and therefore their testimony was essential to his defense, where he challenged the lawfulness of the order given by G4S to clear city council chambers. *See State v. White*, 211 Or App 210, 215, 154 P3d 124, *adh'd to as clarified on recons*, 213 Or App 584, 162 P3d 336, *rev den*, 343 Or 224 (2007) (stating that the lawfulness of the order to leave the premises is an essential element of criminal trespass in the second degree).

A witness's duty to accommodate a defendant's right to compel the production of evidence is constrained by relevance. *Bray*, 281 Or App at 612. Evidence is relevant so long as the inference desired by the proponent is reasonable. *Titus*, 328 Or at 481. While a defendant has broad latitude to explore relevant avenues for cross-examination, a nonspeculative showing of relevance is required to compel a witness's appearance at trial. *See State v. Hedgpeth*, 365 Or 724, 732, 452 P3d 948 (2019) (providing that "facts in issue can 'be established by reasonable inferences, but not through speculation'") (quoting *State v. Jesse*, 360 Or 584, 597, 385 P3d 1063 (2016)).

The trial court did not err when it quashed defendant's subpoenas for city council members because the theory as to the relevance of their testimony—that their dislike for defendant is what motivated the order to recess the meeting, which then caused G4S to order all participants to leave the chamber—was too speculative to lead to admissible evidence. Because the crime of criminal trespass requires that the underlying order to leave be "lawful," defendant argues that it was relevant to the offense to

---

[5] As noted above, we focus on the violation of defendant's statutory rights. We need not reach defendant's related constitutional issues because any error would be harmless under state and federal constitutional standards for the same reasons.

establish whether defendant had a constitutional right to remain. *White*, 211 Or App at 215. Defendant's argument for calling city council as witnesses was too speculative to further this theory. The mayor recessed the meeting and then G4S gave the order to clear the chamber, which was neutral on its face and resulted in everyone being removed from council chambers, not just defendant. On these facts, there is nothing beyond speculation that would create an expectation that a member of city council would testify that the actual reason G4S cleared the chamber was because of some constitutional activity of defendant.

Moreover, no member of city council gave the order that was the source of the trespass charge. That order came from G4S. *See Phillips*, 245 Or App at 46 (holding that evidence of one person's bias, without more, is too speculative to be used to demonstrate the bias of a different person). Without any evidence to elevate defendant's theory that city council was targeting his constitutionally protected activity when it recessed the meeting from the realm of speculation, the trial court did not err when it quashed the subpoenas for the members of city council.

Affirmed.