Argued and submitted September 9, 2020, reversed and remanded
August 3, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WAYLON K. PYLE,
aka Waylon Karl Pyle,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR51000; A169792

516 P3d 273

Defendant appeals from a judgment of conviction for attempted fourth-degree assault and harassment, raising six assignments of error. In four of his assignments, defendant contends that the trial court erred in ruling that it would not enforce defendant's subpoena of a witness who had been excused the previous day if the witness did not appear voluntarily. When the witness did not appear, the trial court denied defendant's motion for a mistrial. Defendant contends that the trial court's actions denied him his right to compulsory process under Article I, section 11 of the Oregon Constitution. *Held*: In the absence of affirmatively quashing the subpoena, the trial court abused its discretion when it failed to impose any remedy to enforce the lawful subpoena. The trial court had discretion as to how best to enforce the subpoena and obtain the witness's appearance and testimony but doing nothing was not within the range of options.

Reversed and remanded.

Melvin Oden-Orr, Judge.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

JAMES, P. J.

Reversed and remanded.

**JAMES, P. J.**

Defendant appeals from a judgment of conviction for attempted fourth-degree assault, ORS 163.160, and harassment, ORS 166.065, raising six assignments of error. We reject the first and the sixth without discussion. Defendant's second through fifth assignments of error all relate to the trial court's ruling that it would not enforce defendant's subpoena of a witness who had been excused the previous day, and the trial court's denial of defendant's motion for a mistrial after the witness did not appear. We conclude the trial court abused its discretion when it failed to take any steps to enforce defendant's lawful subpoena, and reverse and remand for a new trial.

We begin with a brief recitation of the evidence presented at trial and the proceedings below. Defendant lived with his stepson C and C's mother. Testimony presented at trial indicated that on July 31, 2018, C's mother and defendant had been arguing and there were ultimately two physical altercations between defendant and C. C and his mother left the house and called 9-1-1, and the police responded. Officer Ladd spoke to C and his mother, and a different officer interviewed defendant.

On the first day of the trial, C testified for the state, describing the altercations between himself and defendant, and was cross-examined by defense counsel. In the interest of allowing C to attend school the next day, the trial court extended the day's proceedings until 5:30 p.m. and encouraged counsel to conclude their questioning of C that day. The parties were told to limit their questioning to 30 minutes, with the court acknowledging that it was possible C's testimony would need to continue the following day. After cross-examination and redirect, the court excused C, with defense counsel stating they were "happy to excuse [him] at this time."

On the second day of the trial, the state called Ladd to testify. During cross-examination, defendant sought to introduce C's statement to Ladd on the night of the incident that he had initiated the physical contact in his altercations with defendant, as an excited utterance exception to the prohibition on hearsay. After an offer of proof and arguments

from both sides, the trial court indicated that it was inclined to deny defendant's request to admit the hearsay evidence. However, the court afforded counsel the opportunity to further research the issue over the lunch hour and to make additional arguments at that time. Following the break, the court ruled that the hearsay would not be admitted.

Subsequently, defendant sought to recall C to question him about his statements to Ladd. In anticipation of the need for his testimony, over the lunch break defense counsel had instructed an investigator to serve a subpoena on C at school. The prosecutor and the trial court expressed displeasure that defense counsel had failed to notify the court before serving the subpoena, and at the timing and manner of serving a high school student at school when he was the victim in the case. The prosecutor did not explicitly move to quash the subpoena, but stated his position that C did not need to come in. The court acknowledged that the defense could have reasons for wanting to recall C and concluded that it would allow C to testify if he appeared in court voluntarily by 3:30 that afternoon, but stated that it would not penalize him for not appearing and would not carry the case over to the next day for additional testimony.[1] C did not appear by the appointed time. Defendant moved for a mistrial on the grounds that his right to compulsory process had been denied, which the trial court denied.

Defendant now argues that his right to compulsory process was violated by the trial court's refusal to take any steps to enforce a lawful subpoena and to obtain C's presence and testimony, asserting that the trial court effectively quashed the subpoena. The state asserts that all of defendant's arguments are premised on the incorrect assertion that he was legally entitled to compel C's last-minute reappearance at trial.

As an initial matter, we address the state's assertion that defendant did not have a right to recall C under the circumstances. The state agreed at oral argument that if C had not previously testified for the state, or if defense

---

[1] Defense counsel later noted that C's mother was present in the courtroom when the court indicated C would not be penalized for not appearing, and expressed concern that she could have conveyed that information to C.

counsel had not agreed that the witness could be released, then the court would have been required to enforce the subpoena. The state at trial and in briefing largely focused on the facts that defendant had already had a sufficient opportunity to question C, had not objected to his being released, had no legitimate reason to recall him, and had unreasonably unilaterally served C at the last minute, demanding his presence within two hours.

Article I, section 11, of the Oregon Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right to *** have compulsory process for obtaining witnesses in his favor ***."[2] A defendant's right to issue subpoenas for witness testimony is further provided by ORS 136.567.[3]

Apart from general assertions regarding procedural and timing facts, the state points to no law in support of its position that defendant should not have been allowed to recall C for his case-in-chief. Recalling a witness for

---

[2] The Sixth Amendment to the United States Constitution, which applies to the states through the Due Process Clause of the Fourteenth Amendment, similarly provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to have compulsory process for obtaining witnesses in his favor ***." Given the nearly identical wording of the two constitutional provisions, Oregon case law has at times considered them simultaneously and has found federal precedent persuasive. *State v. Huffman*, 65 Or App 594, 598-99, 672 P2d 1351 (1983). More recently, the Supreme Court has held that a compulsory process argument could be resolved under Article I, section 11, and thus did not need to address whether the same conclusion would be reached under the Sixth Amendment. *State v. Weaver*, 367 Or 1, 21 n 5, 472 P3d 717 (2020). We limit the discussion here to the Oregon Constitution.

[3] ORS 136.567 states, as relevant here:

"(1) A defendant in a criminal action is entitled, at the expense of the state or city, to have subpoenas issued for not to exceed 10 witnesses within the state. A defendant is entitled, at the expense of the defendant, to have subpoenas issued for any number of additional witnesses without an order of the court. The defendant is responsible for the costs of serving the subpoenas and for the costs, as provided in ORS 136.602, of witness per diem and mileage and for expenses allowed under ORS 136.603.

"(2) Any subpoena that a defendant in a criminal action is entitled to have issued shall be issued:

"(a) Upon application of the defendant, by the clerk of the court in which the criminal action is pending for trial, and in blank, under the seal of the court and subscribed by the clerk; or

"(b) By an attorney of record of the defendant, and subscribed by the attorney."

purposes of rebuttal, or impeachment, is a well-established litigation strategy. In any event, those arguments obscure the essential point—the witness here was lawfully served. The subpoena power is not limited to witnesses who have not already been examined. Here, there is no dispute, and in fact the state conceded at oral argument, that the subpoena was lawful.

We thus turn to the trial court's decision not to enforce defendant's lawful subpoena. Whether a defendant's right to compulsory process has been violated is a question of law. *State v. Cartwright*, 336 Or 408, 419-20, 85 P3d 305 (2004); *State v. David*, 317 Or App 794, 796, 505 P3d 1057 (2022). We review the trial court's ruling whether to quash a subpoena for abuse of discretion. *Benchmark Properties v. Hipolito*, 161 Or App 598, 603, 984 P2d 927 (1999). A court's ruling whether to initiate contempt proceedings or to grant a continuance is reviewed for an abuse of discretion. *State v. Baker*, 232 Or App 112, 120-21, 125 n 7, 221 P3d 749 (2009).

A person who has been subpoenaed has an obligation to appear as a witness and give evidence. *State v. Jackson*, 223 Or App 429, 433, 196 P3d 559 (2008). In some limited circumstances a court may quash a subpoena, such as when compliance would work a hardship on the witness or would otherwise be oppressive. *Hipolito*, 161 Or App at 603 ("[A] witness who received two separate subpoenas requiring the witness to appear in two different courts that were 90 miles apart with only one hour between the times for appearance was not subject to sanctions for contempt when the witness appeared in one but not both courts." (Citing *State v. O'Malley*, 255 Or 544, 469 P2d 36 (1970), *overruling and adopting dissent in State v. O'Malley*, 248 Or 601, 435 P2d 812 (1967).)).[4] There are also limitations on a witness's

---

[4] There is no specific process for parties or a witness to challenge a subpoena to provide testimony. Although *former* ORCP 55 B (2018), *amended and renumbered as* ORCP 55 A(7) (2020) does provide a process for challenging a subpoena *duces tecum*, those procedures have not been extended to witnesses summoned to testify. *See* Council on Court Procedures *Amendments to the Oregon Rules of Civil Procedure*, Introduction, Dec 12, 2020, *available at http://counciloncourtprocedures.org/Content/Promulgations/Amendments%20to%20the%20ORCP%20Promulgated%2012-12-2020.pdf.*). ORCP 55 D(1) requires service to be made "so as to allow the witness a reasonable time for preparation and travel to the place of attendance." The court also has discretion to reasonably control the mode

duty to accommodate a criminal defendant's broad right to compel testimony or evidence, including relevance and privilege. *State v. Bray*, 281 Or App 584, 612, 383 P3d 883 (2016) (*citing Cartwright*, 336 Or at 417); *State v. Beeler*, 166 Or App 275, 283, 999 P2d 497 (2000) ("[C]ompulsory process does not automatically trump other legitimate concerns and may, for example, be subjected to a state's established rules of evidence and procedure."). However, in the context of a criminal case, the trial court's exercise of its inherent authority to determine when witnesses may be relieved of their duty to appear must be attentive to the constitutional demands of compulsory process. *See, e.g.*, *State ex rel Gladden v. Lonergan*, 201 Or 163, 189, 269 P2d 491 (1954) ("The right to compulsory process for necessary and material witnesses on his behalf is a valuable right guaranteed to an accused. *** In the interests of justice, it is the duty of courts to enforce the right.").

Unless an otherwise lawful subpoena is quashed or modified by the trial court, it must be given effect. The court has a range of actions with which it can compel compliance with a lawfully issued subpoena. ORCP 55 G addresses subpoena enforcement:

> "Disobedience of subpoena; refusal to be sworn or to answer as a witness. Disobedience to a subpoena or a refusal to be sworn or to answer as a witness may be punished as contempt by a court before whom the action is pending or by the judge or justice issuing the subpoena. Upon hearing or trial, if the witness is a party and disobeys a subpoena or refuses to be sworn or to answer as a witness, that party's complaint, answer, or reply may be stricken."

ORCP 55 G (made applicable to criminal actions by ORS 136.600). The power of a court to impose sanctions for contempt is an inherent judicial power, and such sanctions

and order of the interrogation of witnesses and the presentation of evidence so as to make the proceedings "effective for the ascertainment of the truth, avoid needless consumption of time and protect witnesses from harassment or undue embarrassment." ORS 40.370(1). We presume that these provisions, along with the trial court's inherent discretion to manage the docket and pursue judicial efficiency, would allow a court to quash a subpoena for testimony *sua sponte*.

Effective January 1, 2020, *former* ORCP 55 (2018) was renumbered and amended by the Council on Court Procedures Amendments. All references here are to the rule in effect at the time of the trial.

can be punitive or remedial, ranging from fines to confinement. ORS 33.025(1); ORS 33.045; ORS 33.105. The available range of options indicates discretion on the part of the court. It is also true that the use in ORCP 55 G of the word "may" suggests that, when confronted with a witness who has not complied with a subpoena, a court retains authority to decline to institute contempt proceedings. *Baker*, 232 Or App at 121. However,

> "when the circumstances of a case fall within the subject matter addressed by ORCP 55 G, although a trial court has discretion not to institute contempt proceedings, it is not free to employ procedures or remedies other than those provided by the legislature. Rather, the court's action must be consistent with the goals of that statute: obtaining the witness's appearance at the proceeding, punishing the witness's noncompliance, or both. Excluding a nonparty witness's testimony is not consistent with either of those goals. Rather, such a remedy in effect ratifies the witness's noncompliance by permitting him to continue not to appear ***."

*Id.*

Here, upon learning that he would not be able to present evidence of C's statements via Ladd's testimony, defense counsel determined C's presence was necessary to his case, and thus issued him a subpoena. The parties did not dispute that the subpoena was lawfully served, and the trial court found that C could testify if he voluntarily appeared by 3:30 p.m. But the court also stated that it was not inclined to continue the proceedings to the next day if C did not appear, nor otherwise take any steps to enforce the subpoena. When C did not appear by the appointed time, the court denied defendant's motion for a mistrial.

There is nothing in this record that suggests the trial court understood itself to be quashing the subpoena, even if we assume that it had the authority to *sua sponte* do so under these circumstances.[5] As such, the trial court was

---

[5] The court acknowledged the procedural difficulties in obtaining C's presence within the short amount of time given the lack of advanced notice, including transportation and his mother's current presence at the trial. The court did not make specific findings that the subpoena was quashed based on hardship or other oppression and recessed in order to see if C would indeed appear based on

within its discretion to not impose contempt sanctions on C; however, the denial of *any* remedy to enforce or modify the subpoena and obtain the lawfully subpoenaed witness's appearance and testimony was an abuse of discretion.

In a criminal proceeding, "the primary aim of the law is to arrive at the truth of the matter in controversy, and no obstacle should be sanctioned that would deny the presence of a competent witness who has knowledge of material facts." *State v. Weaver*, 367 Or 1, 28, 472 P3d 717 (2020) (internal citations omitted). A defendant's right to compulsory process protects the right to a fair trial and the right to present a defense. *State v. Mai*, 294 Or 269, 274, 656 P2d 315 (1982) ("[T]he fundamental right that the compulsory process clause aims to protect is 'the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.'") (quoting *Washington v. Texas*, 388 US 14, 19, 87 S Ct 1920, 18 L Ed 2d 1019 (1967)).

How best to enforce the subpoena to ensure the presentation of evidence is committed to the sound discretion of the trial court, but it cannot do *nothing*. Rather, the court is free to craft the response that best secures the witness, and thereby furthers the constitutional guarantees of a fair trial that the subpoena power, for its part, helps to provide. As the Supreme Court recently noted,

> "The right to compulsory process does not guarantee that a witness will obey a subpoena, come to court, waive privilege, or otherwise prove cooperative. But the compulsory process clause, adopted to ensure that defendants have tools to deal with witnesses who would not testify unless compelled, protects at least the right to try."

*Weaver*, 367 Or at 24.

For those reasons, we conclude that, in the circumstances presented here, the trial court abused its discretion when it refused to exercise any option for enforcement of defendant's lawful subpoena.

---

the subpoena. The court also noted that had counsel informed the court earlier of the decision to recall C, arrangements could have been made with counsel or C's mother to make it possible for C to appear voluntarily.

In addition, we conclude that the trial court's error was not harmless. To decide whether an error was harmless, we assess the error in light of the record as a whole. "If the evidence that was erroneously admitted or excluded relates to a 'central factual issue' in the case, it is more likely to have affected the jury's determination than if it deals with a tangential issue." *State v. Krieger*, 291 Or App 450, 455-56, 422 P2d 300 (2018) (quoting *State v. Marrington*, 335 Or 555, 566, 73 P3d 911 (2003)). Here, the erroneously excluded evidence, C's additional testimony and responses regarding his prior statements to Ladd, would have addressed facts that were integral to defendant's account of the events that transpired. We cannot say that the exclusion of C's testimony regarding his statement to Ladd was harmless.

Reversed and remanded.