Argued and submitted October 29, 1990, affirmed October 2, reconsideration denied November 20, 1991, petition for review denied January 21, 1992 (312 Or 588)

Verne J. BOGER,
*Respondent,*

*v.*

NORRIS & STEVENS, INC.,
Jim Day and Mary Lou Day,
*Appellants.*

(A8712-07472; CA61773 (Control))

Monte IRWIN,
*Respondent,*

*v.*

NORRIS & STEVENS, INC.,
Jim Day and Mary Lou Day,
*Appellants,*

*and*

William H. BAUMAN,
*Defendant.*

(A8802-00894; CA61774)
(Cases Consolidated)

818 P2d 947

James H. Clarke, Portland, argued the cause for appellants. With him on the briefs was Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland.

Karl G. Anuta, Portland, argued the cause for respondent Verne J. Boger, and Michael D. Royce, Portland, argued the

cause for respondent Monte Irwin. With them on the brief was Donald B. Bowerman, Oregon City.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

RICHARDSON, P. J.

---

* Joseph, C. J., *vice* Newman, J., retired.

## RICHARDSON, P. J.

In these consolidated actions, plaintiffs, who were tenants at an apartment complex, of which defendant Norris & Stevens is the managing agent and defendants Day are the resident managers, sought recovery for brain damage and other serious conditions that they allege were caused by concentrations of toxic metals in the hot water heaters and the water provided by defendants. The jury awarded compensatory and punitive damages to plaintiffs. Defendants appeal from the resulting judgments, and we affirm.

In their first three assignments, defendants contend that plaintiffs failed to establish an adequate foundation for the medical causation testimony of plaintiffs' experts, Doctors Morton and Grimm; that the court erred in admitting that evidence; and, therefore, that plaintiffs' proof of causation failed and the court erred in denying defendants' motion for a directed verdict. Defendants' arguments in support of these assignments assume three forms. They maintain, first, that the evidence that aluminum and other metals have the requisite toxicity and capability of producing plaintiffs' injuries lacks general acceptance in the scientific community and, in other respects, fails to meet the tests for admissibility of "scientific evidence" under *State v. Brown,* 297 Or 404, 687 P2d 751 (1984).[1]

Assuming, without deciding, that the *Brown* rationale applies to this expert evidence concerning medical causation, we reject defendants' argument. The *Brown* standards are directed at determining whether scientific evidence has a level of reliability sufficient for it to have probative value, not at establishing that the evidence reflects or rests on a certain or indisputably correct scientific proposition. Whether the proposition is correct is a question of fact, and it relates to weight rather than admissibility. Defendants' argument appears to confuse the two concepts, and they present us with what are essentially jury arguments that denigrate the weight to be accorded the evidence that formed the foundation for the testimony. Defendants could and did make that point to the jury, through their own expert and in other ways.

---

[1] The court conducted a pretrial hearing on the admissibility of plaintiffs' "scientific evidence" under *State v. Brown, supra.*

*See Richardson by Richardson v. Richardson-Merrell, Inc.,* 857 F2d 823, 832 (DC Cir 1988), *cert den* 493 US 882 (1989). The foundation for the evidence was adequate under the *Brown* standards, and it was admissible under those standards.

■ The second kind of argument that defendants make is that certain specific tests on which Morton and Grimm relied were either of no diagnostic value or were improperly performed. Again, the contentions go only to weight.

■ Finally, defendants argue that Morton and Grimm lacked the necessary stature in the field of toxicology to qualify as experts. That argument is untenable. Morton is a professor of environmental medicine at Oregon Health Sciences University; he directs a clinic "aimed at diagnosis of occupational and environmental toxic problems" and teaches toxicology to medical students at the university. Grimm is a neurologist; he testified, *inter alia,* that his practice requires him to have a "fairly good knowledge of toxicology." The trial court correctly recognized the witnesses as qualified experts. We reject defendants' first three assignments.

■ In their fourth assignment, defendants contend that the court erred in denying a directed verdict on the ground that there was no evidence that they knew or had reason to know that the water was toxic. We disagree. There was abundant evidence that they were alerted to the manifestations of the problem. The jury could find that, if they lacked actual knowledge that a harmful condition existed, or of the specific nature of the condition, it was the result of their failure to inform themselves of what they had ample reason to know.

■■ Defendants argue in their next assignment that the trial court erred by submitting the claims for punitive damages to the jury. They rely, *inter alia,* on *Wilson v. Tobiassen,* 97 Or App 527, 777 P2d 1379, *rev den* 308 Or 500 (1989), and seem to derive the proposition from that case that punitive damages cannot be awarded in a case where negligence is the theory of liability. That understanding of *Wilson* is not correct. We said there that the plaintiff's proof showed only negligence; we did not say that punitive damages may not be

recovered where the requisite showing of aggravated misconduct is made, notwithstanding that the lesser showing of ordinary negligence would suffice to establish tort liability. The evidence here supported findings that, over and above the negligent conduct that produced the injuries, defendants attempted to intimidate plaintiffs and frustrate plaintiffs' and state health officials' efforts to investigate and identify the problem. They also made after-the-fact misrepresentations to tenants concerning the problem, and they evicted plaintiff Boger in retaliation for his having contacted city regulatory personnel. The evidence clearly and convincingly supported the award of punitive damages. *See Joachim v. Crater Lake Lodge,* 48 Or App 379, 617 P2d 632, *rev den* 290 Or 211 (1980).

■       Defendants also assert that the court erred by allowing defendant Jim Day to be impeached by evidence of prior felony convictions without weighing the prejudice of the evidence against its probativeness. In *State v. Dick,* 91 Or App 294, 754 P2d 628, *rev den* 306 Or 528 (1988), we discussed the amendment of OEC 609(1) by the 1986 initiative, Ballot Measure 10. Or Laws 1987, ch 2, § 2. Before the amendment, the rule read:

> "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime in other than a justice's court or a municipal court shall be admitted if elicited from the witness or established by public record, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (b) involved false statement."

The measure deleted the reference to the balancing of probativeness and prejudice.

We explained in *Dick* that, before OEC 609(1) was adopted in its original form, evidence of the defined kinds of criminal convictions was admissible *per se* to attack the credibility of a witness. The effect of the amendment was to restore the *status quo ante. Dick* was a criminal case. We left open the question of whether the amendment had the same effect in civil cases, 91 Or App at 298, n 2, and defendants

argue that it should not. They reason that the 1986 measure was concerned with crime victims' rights and should therefore have no impact on civil actions.

The problem with that reasoning, of course, is that the measure leaves nothing in OEC 609(1) to make the admissibility of evidence of the kind in question contingent on a weighing of its prejudice and probativeness in *any* case. The rule now is one of unconditional admissibility and, in that respect, it duplicates its common law and statutory precursors, *see former* ORS 45.600, which were as applicable in civil as in criminal cases. *See Marshall v. Martinson,* 268 Or 46, 518 P2d 1312 (1974). So, now, is OEC 609(1). The reception of the evidence was proper. We do not imply that trial judges do not have discretion to exclude such evidence on grounds that relate to the administration of the proceedings, *e.g.,* cumulativeness. No such question is involved here. We hold only that the rule now makes the evidence admissible without a balancing of its probativeness against its prejudicial potential.

Defendant makes one other assignment, but it warrants no discussion.

Affirmed.