Argued and submitted August 1, 2022, affirmed September 27, 2023

Mary DOE,
an individual proceeding under a fictitious name, as
guardian *ad litem* for Melissa Doe, a minor individual
proceeding under a fictitious name,
*Plaintiff-Appellant,*

*v.*

THE FIRST CHRISTIAN CHURCH
OF THE DALLES, OREGON,
*Defendant-Respondent.*

Wasco County Circuit Court
16CV18445; A173412

537 P3d 954

Plaintiff, the guardian *ad litem* for minor child M, appeals from a judgment entered for defendant, on claims for direct and vicarious liability for the sex abuse of M by an assistant in defendant's youth group. On appeal, plaintiff argues that the trial court erred in excluding evidence of three felony convictions of the youth-group assistant that plaintiff sought to use for impeachment purposes, and in giving the uniform jury instruction for "but for" causation and refusing to give the uniform jury instruction for "substantial factor" causation. *Held*: The trial court erred in excluding the evidence of the witness's felony convictions, but the error does not warrant reversal in the circumstances of this case. The trial court did not err in instructing the jury on causation, because plaintiff's arguments are foreclosed by *Haas v. Estate of Carter*, 370 Or 742, 525 P3d 451 (2023).

Affirmed.

John A. Olson, Judge.

Travis Eiva argued the cause for appellant. Also on the briefs were Stephen Crew and Peter Janci.

Jonathan Henderson argued the cause for respondent. Also on the brief were Nicole M. Rhoades, Christie L. Moilanen, and Davis Rothwell Earle & Xóchihua P.C.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Plaintiff, the guardian *ad litem* for minor child M, appeals from a judgment entered for defendant, The First Christian Church of the Dalles, Oregon (the church, or defendant), on claims for direct and vicarious liability for the sex abuse of M by an assistant in the church's youth group, Stephens. The jury found that Stephens's tortious conduct did not occur within the scope of his agency for the church and that the negligence of the church did not cause M's damages.

On appeal, plaintiff raises two distinct issues. First, plaintiff assigns error to the trial court excluding evidence of three felony convictions of Stephens that plaintiff sought to use for impeachment purposes under OEC 609. We conclude that the trial court erred in excluding that evidence, but that the error does not warrant reversal in the circumstances presented here. Second, plaintiff assigns error to the trial court giving the uniform jury instruction for "but for" causation and refusing plaintiff's request to give the uniform jury instruction on "substantial factor" causation. We conclude that the trial court did not err in instructing the jury, because plaintiff's arguments are foreclosed by *Haas v. Estate of Carter*, 370 Or 742, 525 P3d 451 (2023). Accordingly, we affirm.

We set out the evidence relevant to the issues raised, including the relevant disputed facts. *See, e.g.*, *State v. Simon*, 294 Or App 840, 849, 433 P3d 385 (2018), *rev den*, 365 Or 502 (2019) ("In assessing whether erroneously admitted or excluded evidence affected the verdict, we consider the nature of the evidence in the context of the trial as a whole."); *see also Ossanna v. Nike, Inc.*, 365 Or 196, 199, 445 P3d 281 (2019) ("We review a trial court's failure to give a requested jury instruction for errors of law, and evaluate the evidence in the light most favorable to establishment of the facts necessary to require the instruction." (Citations omitted.)).

In the fall of 2014, when M was 12 years old, she began attending the church's youth group at the suggestion of a friend. The youth group was run by Caleb Morris, who

had begun working as the church's youth pastor the previous June. Adult assistants would also attend youth group meetings and would assist with smaller break-out group discussions. That same fall, Morris allowed 18-year-old Michael Stephens, who had graduated from high school the previous June, to continue attending the youth group as an adult assistant.

At trial, M testified that she first met Stephens in person at the youth group in the fall of 2014 and that their communication on social media began after that meeting. She further testified that she was at times in the same small group as Stephens and shared personal information with the group, but that they never interacted one-on-one or unsupervised during any youth group meetings. She testified that she confided things to Stephens in their online interactions.

Stephens was not present at trial; the transcript of his deposition testimony was read into the record as a witness for plaintiff. In that testimony, Stephens offered that in the youth group he was supposed to be a role model, leader, and teacher for the children and that it was a position of responsibility and trust. In that role, Stephens would participate in small-group discussions.

Stephens's testimony about the role the youth group played in his relationship with M was somewhat inconsistent. He testified that he did not have any specific recollection of meeting M before she attended the youth group and did not have any recollection of interacting with her online before meeting her at the youth group but that they had met by November 2014. He also testified that he met and became friends with M while at youth group and that, if he had not met M at youth group, he did not think he would have had sex with her. However, on cross-examination, Stephens testified that he might have interacted with M online before meeting her at the youth group, that he did not remember being in small groups with M or learning personal information about her at youth group, that he did not interact with her one-on-one at youth group, that the church was not involved in the development of the relationship that they formed online, and that he might have victimized M even

if he had not met her at the church if he had met her somewhere else. Stephens also testified that, at youth group, he did not lead any lessons, was never in a small group without an adult leader, and was not authorized to discuss personal issues with participants one-on-one.

Other evidence at trial about M's and Stephens's meeting and interaction included M's pretrial statements that she had begun interacting with Stephens on social media in September or October, before first attending youth group in late November, and had a Facebook friend request and message from Stephens in September 2014. Morris testified that Stephens's role at youth group was primarily as an assistant to him, that Stephens did not lead discussions in small groups or teach youth, and that he was always with another adult in small-group settings. Morris also testified that M joined the youth group in November or December 2014.

Sometime in November 2014, a leader in another youth program told Morris that L, a 14-year-old girl, had reported that Stephens had driven her home alone from Morris's youth group and kissed her without her consent. L also reported that one night at youth group Stephens sat next to her and caressed her thigh. Stephens admitted to kissing L, but maintained the kiss was consensual and denied any other conduct. Morris shared the information with the other pastors of the church but did not otherwise report the incident. Stephens was suspended from attending youth group from December 2014 to February 2015.

During the remainder of 2014, M and Stephens continued to communicate by social media in a friendly way. In January or February 2015, that communication became sexual in nature when, as M testified, Stephens would bring up "more sexual stuff." After Stephens returned to youth group, he also saw M there most every Wednesday, but they did not interact one-on-one. On social media, Stephens and M exchanged nude photos and Stephens convinced M to send him photos and videos of her engaging in sex acts. In June 2015, the two engaged in a sexually explicit video call and chat, during which M agreed to have sex with Stephens.

He went to her house when her parents were not at home and sodomized her orally and anally.

The following month, M's mother discovered the sexually explicit chat between Stephens and M. She took M to the police station, and M told the police about her inter-actions with Stephens, who ultimately pleaded guilty to second-degree sodomy of M. He admitted in his testimony that all of the allegations in the indictment against him were true, including the counts that were dismissed as part of his plea bargain.

Plaintiff, as guardian *ad litem* for M, brought this action against the church, alleging claims based on vicari-ous and direct liability. Plaintiff alleged that the church was vicariously liable for Stephens's actions against M that con-stituted battery, invasion of privacy, false imprisonment, and intentional infliction of emotional distress. Plaintiff alleged claims of direct liability against the church for negligent infliction of emotional distress and five specifications of neg-ligence related to the church's failure to properly respond to and warn others about Stephens after learning of his behav-ior with young girls and failure to properly supervise and train him. Ultimately, the case was submitted to the jury on plaintiff's vicarious liability claims for battery and invasion of privacy and on plaintiff's direct claim for negligence.

During trial, plaintiff sought to admit as impeach-ment evidence under OEC 609(1) that Stephens had five fel-ony convictions for sex crimes against unidentified minors in five different cases. Those convictions were for second-degree sodomy (two convictions), first-degree sex abuse, second-degree sex abuse, and luring a minor. The court admitted the public records of convictions for second-degree sodomy and luring a minor but excluded the public records of the other three convictions as cumulative. Plaintiff referred to the exhibits relating to those convictions only during clos-ing arguments; plaintiff did not review the exhibits with the jury or tell the jury about the nature of the convictions but asked the jury to read them and take them into consider-ation in evaluating Stephens's credibility. Throughout the trial, the parties and witnesses referred to Stephens's arrest and conviction related to M and to his current incarceration.

As relevant to this appeal, two of the main points of contention at trial were whether Stephens's conduct occurred within the scope of his agency for the church as a youth group assistant and whether any negligence on the part of the church caused M's harm. With regard to causation, plaintiff requested that the court give the uniform instruction for "substantial factor" causation and not give the uniform instruction for "but for" causation requested by the church.[1] Plaintiff argued, relying on *Joshi v. Providence Health System*, 342 Or 152, 149 P3d 1164 (2006), that substantial factor causation applies whenever there are multiple tortfeasors. After reviewing *Joshi*, the trial court concluded that the "but for" causation instruction applied and gave that instruction rather than the "substantial factor" instruction.

Using a special verdict form, the jury found that Stephens was an agent of the church but that none of his acts that were within the scope of that agency "lead to or result[ed] in" a battery of M or an invasion of M's privacy. The jury further found that the church was negligent in allowing Stephens to return to youth group after his suspension, but that the church's negligence did not cause damage to M. The trial court then entered a judgment dismissing plaintiff's claims against the church with prejudice.

On appeal, plaintiff raises two issues, arguing that the trial court committed reversible error in (1) excluding

---

[1] Oregon Uniform Civil Jury Instruction 23.01 provides:

"CAUSATION—'BUT FOR'

"The defendant's conduct is a cause of the plaintiff's [harm / injury] if the [harm / injury] would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the plaintiff's [harm / injury] if that [harm / injury] would have occurred without that conduct."

Oregon Uniform Civil Jury Instruction 23.02 provides:

"CAUSATION—'SUBSTANTIAL FACTOR'

"Many factors [or things] may operate either independently or together to cause [harm / injury]. In such a case, each may be a cause of the [harm / injury] even though the others by themselves would have been sufficient to cause the same [harm / injury].

"If you find that the defendant's act or omission was a substantial factor in causing the [harm / injury] to the plaintiff, you may find that the defendant's conduct caused the [harm / injury] even though it was not the only cause. [A substantial factor is an important factor and not one that is insignificant.]"

the evidence of three of Stephens's felony convictions, and (2) giving the "but for" causation instruction instead of plaintiff's requested "substantial factor" causation instruction.

We first address the trial court's exclusion of evidence of Stephens's felony convictions under OEC 609(1), which we review for legal error. *See, e.g.*, *State v. Thomas*, 257 Or App 770, 774, 308 P3d 270 (2013) (taking that approach). The church concedes that the trial court erred in excluding that evidence but argues that the error did not affect a substantial right of plaintiff and thus does not warrant reversal of the judgment. We agree on both points.

First, we agree that the trial court erred in excluding the evidence. Subject to limitations not applicable here, under OEC 609(1), "[f]or the purposes of attacking the credibility of a witness," a trial court is required to admit evidence that a witness has been convicted of a felony if established by public record.[2] A trial court lacks discretion to exclude evidence that meets the requirements of that rule, except in cases where it would be a violation of due process not to conduct balancing. *State v. Aranda*, 319 Or App 178, 190, 509 P3d 152, *rev allowed*, 370 Or 214 (2022) (when requested by the defense, due process requires the court to balance the probative value and prejudicial effect of admitting a prior conviction of a criminal defendant); *Thomas*, 257 Or App at 774 (a court has some discretion to limit the extent of an inquiry into the facts underlying a conviction but cannot wholly exclude evidence of a conviction admissible under OEC 609(1)); *see also Boger v. Norris & Stevens, Inc.*, 109 Or App 90, 96, 818 P2d 947 (1991), *rev den*, 312 Or 588 (1992) (OEC 609(1) operates the same in civil cases as criminal cases). Here, the court erred in excluding evidence of three of Stephens's convictions on the ground that the evidence was cumulative, because there was not other evidence in the record establishing those same convictions.

---

[2] OEC 609(1) provides:

"For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the crime:

"(a) Was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; or

"(b) Involved false statement or dishonesty."

*Cf. State v. Pratt*, 316 Or 561, 573, 853 P2d 827 (1991), *cert den*, 510 US 969 (1993) (the court did not err in excluding documentary evidence of witness's prior convictions when the evidence was cumulative of the witness's own testimony about his criminal record).

Second, we agree with the church that the trial court's error does not warrant reversal of the judgment. Despite the court's error here, we cannot reverse the judgment unless the party seeking reversal can show that the evidentiary error substantially affected the party's rights. *Purdy v. Deere and Co.*, 355 Or 204, 232, 324 P3d 455 (2014); *see also* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."); OEC 103(1) ("Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). In making that determination, we consider whether excluding the evidence had little likelihood of affecting the jury's verdict. And, more specifically, in terms of the exclusion of impeachment evidence, "a trial court's error is harmless if either: '(1) despite the exclusion, the [factfinder] nonetheless had an adequate opportunity to assess [the witness's] credibility; or (2) [the witness's] credibility was not important to the outcome of the trial.'" *State v. Jones*, 274 Or App 723, 728, 362 P3d 899 (2015) (quoting *State v. Titus*, 328 Or 475, 482, 982 P2d 1133 (1999) (brackets in *Jones*)).

Here, the exclusion of Stephens's three other felony convictions for sex crimes against minors had little likelihood of affecting the verdict. Plaintiff presented Stephens as a witness by reading his deposition testimony, which constrained the jury's ability to assess his credibility. Nonetheless, the jury did so in light of the evidence of his conviction for second-degree sodomy against M, his admission that he committed the acts against M in the dismissed counts of the indictment, and his additional convictions against two unidentified minors for second-degree sodomy and luring a minor. Plaintiff could have stressed the additional convictions against other minors but chose instead to mention the existence of the convictions only in closing—and

not to give the details of the convictions but to leave it for the jury to read the documentary evidence during deliberations. We are not persuaded by plaintiff's argument that evidence of the three additional felony convictions would have had an effect on the jury's assessment of Stephens's credibility, particularly given the manner in which plaintiff chose to present that information. The three additional convictions also were not a *qualitatively* different type of impeachment evidence than evidence of the other felony convictions that was admitted. We are not persuaded by plaintiff's argument that the fact of three additional convictions would have caused the jury to assess Stephens's credibility differently under these circumstances.

In addition, the case did not come down to simply a swearing contest between M and Stephens about how they met, the development of their relationship, or his role in the youth group. Both M and Stephens testified that their relationship was primarily on social media, as they did not interact one-on-one at youth group. Both made conflicting statements about whether they met at youth group before interacting online or whether the online interactions happened first. Other evidence at trial supported the defense theory that they met online first, and Morris's testimony supported Stephens's testimony about his role at youth group as an inexperienced assistant. Ultimately, plaintiff has failed to show that the trial court's error in excluding evidence of the three additional felony convictions affected a substantial right of the parties.

We turn to plaintiff's challenge to the causation jury instruction. The Supreme Court recently issued an opinion that discusses when it is appropriate to use the "substantial factor" jury instruction, so we begin our discussion there.

In *Haas*, the plaintiffs brought a negligence action against the defendant, who was driving the car that struck the plaintiffs' stopped car. 370 Or at 744. At trial, a primary issue was whether the defendant's driving was a cause-in-fact of the plaintiffs' injuries. Both of the plaintiffs experienced neck pain after the accident, and one of the plaintiffs also experienced lumbar pain. However, both might have needed treatment without the accident because of

preexisting conditions. *Id.* at 744-45. They asked the court to give both the "but for" and "substantial factor" causation jury instructions, but the court delivered only the "but for" instruction, and the jury returned a verdict for the defendant. *Id.* at 745-46. The plaintiffs appealed, arguing that they were entitled to have the court deliver the "substantial factor" instruction, because the jury was confronted with multiple possible causes of the plaintiffs' neck and back problems.

In the opinion, the court started with the basic principle that, for a negligence claim, "'causation in fact' is established when 'someone examining the event without regard to legal consequences would conclude that the allegedly faulty conduct or condition in fact played a role in its occurrence.'" *Id.* at 748 (quoting *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 606, 642 P2d 624 (1982)). The court further explained that, "[t]o determine whether a defendant's negligence is *one of many* potential causes of a plaintiff's harm, courts commonly use what is referred to as a 'but-for' test," that is, "[i]f the plaintiff's injury would not have occurred but for the defendant's negligence, then the defendant's negligence is a cause of the injury." *Id.* at 749 (emphasis in original). The "but for" instruction does not tell a jury that a defendant's conduct "must be the *only* or even the *predominate* cause of the plaintiff's injury." *Id.* (emphases in original).

The court explained, however, that there is at least one situation where the "but for" instruction does not work: "'[i]f two causes concur to bring about an event, and either one of them, *operating alone*, would have been *sufficient* to cause the identical result[.]'" *Id.* (quoting W. Page Keeton *et al.*, *Prosser and Keeton on The Law of Torts* § 41, 266 (5th ed 1984) (emphases and brackets in *Haas*)). In that situation, the plaintiff cannot prove causation against either tortfeasor, because either one could claim that the harm would have occurred even without that tortfeasor's act; thus, the "but for" instruction would effectively shield both tortfeasors from liability. The court explained that "[t]he substantial factor test was developed primarily for that circumstance." *Id.* at 750.

The court then addressed the plaintiffs' particular arguments. The plaintiffs argued "that a substantial factor

instruction is required in all multiple causation negligence cases and that a but-for instruction does not suffice," because "a but-for instruction necessarily indicates that a defendant cannot be held liable unless the defendant's conduct was the sole or predominate cause of the plaintiffs' injuries." *Id.* at 757. The court rejected those arguments, reiterating that the "but for" instruction describes the necessary cause-in-fact relationship for most negligence cases with multiple causal factors and does not "implicitly tell a jury that it must find that the defendant's conduct was the sole or predominate cause of the alleged harm." *Id.* 757-58. Turning to the facts of the case before it, the court determined that it was not one of the exceptional cases in which a "but for" instruction "fails," such that a "substantial factor" test was required. The court noted that, in many cases, a defendant will point to another source as the cause of the plaintiff's injuries but doing so "does not render a but-for instruction erroneous[;] *** it is appropriate to instruct the jury that defendant's conduct is a cause of injury if the injury would not have occurred but for the conduct." *Id.* at 759.

The court also rejected the concern raised by *amicus curiae*, Oregon Trial Lawyers Association, that the "but for" instruction requires "a plaintiff to prove not only that the defendant's conduct contributed to the injury that the plaintiff sustained, but also that, 'in a universe of possibility the [preexisting condition] would not have otherwise caused the plaintiff to suffer the same or similar injury in another event.'" *Id.* at 760 (brackets in original). The court explained that the argument "wrongly focuses on an issue that plaintiff is not required to prove—that the same or similar result would not have occurred *in another event*." *Id.* (emphasis in original). The question that is presented to the jury is "whether the injury that in fact occurred would have occurred when and as it did without the defendant's tortious conduct." *Id.*

With that background in place, we turn to plaintiff's specific arguments in this appeal.[3] Plaintiff argues that

_____

[3] In her reply brief, plaintiff also argues for the first time that a "substantial factor" instruction was required for her vicarious liability claims, in addition to her negligence claims against the church. As we understand it, that argument asserts that, because Stephens's acts as an agent of the church combined with his

the trial court was required to give the "substantial factor" instruction because of the concurrent tortious actions—the church was negligent in its supervision of Stephens and in allowing him to have access to children, and Stephens, concurrently, was culpable for his abuse of M. Plaintiff argues that a jury could have found that each tortfeasor's conduct was independent and concurrent and combined to produce plaintiff's injuries. Plaintiff further argues that the "but for" instruction was not appropriate, because it required plaintiff to show that Stephens would not have sexually abused M but for the church's negligence. Plaintiff argues that that placed a burden on her "to prove an alternate reality that Stephens *could not* have otherwise harmed [M] but for the church's negligence." (Emphasis in original.)

We conclude that *Haas* controls and reject plaintiff's arguments, which are substantially similar to those raised in *Haas*. First, as explained above, *Haas* expressly rejected the premise of plaintiff's first argument—that the court must give the "substantial factor" instruction when there are two tortfeasors acting concurrently. Rather, *Haas* explained that the "substantial factor" instruction is only required in those exceptional circumstances where the "but for" instruction fails. 370 Or at 758. Plaintiff has not argued that such an exceptional circumstance is presented in this case, nor do we discern one. A jury applying the "but for" causation instruction could have found that the church's negligence caused M's harm, because the church's negligence gave Stephens the opportunity to interact and develop a relationship with M. The fact that the jury did not so find on the facts of this case does not mean that the instruction "fails," as explained in *Haas*.

We also reject plaintiff's second argument, which is premised on plaintiff's assertion that the "but for" instruction improperly required her to show that Stephens *could*

---

acts as a nonagent to cause the harm to M, an instruction on substantial factor causation was required. However, plaintiff did not raise that issue below or in her opening brief, and it is questionable whether a "substantial factor" causation instruction could apply as suggested by plaintiff. Moreover, plaintiff did not assign as error on appeal the jury instructions the trial court gave specific to the vicarious liability claims, which directly covered the scope of employment and causation elements in those claims. For those reasons, we do not address that argument.

*not* have harmed M but for the church's negligence. That argument was also explicitly rejected in *Haas*. The court explained that the uniform "but for" instruction does not require a plaintiff to prove that an injury would not have occurred given different circumstances; rather, the jury is asked "whether the injury that in fact occurred would have occurred when and as it did without the defendant's tortious conduct." 370 Or at 760. The court stated that the problem of having to address hypothetical alternatives to address that question—which "is a problem inherent in determining causation"—does not mean a trial court errs in giving the "but for" instruction and is not a reason to require a "substantial factor" instruction. *Id.* at 762. Plaintiff's arguments do not provide a basis for us to conclude that the trial court erred in giving the "but for" instruction, particularly when the "substantial factor" instruction was not required.

The only instructional issues before us on this appeal are whether the trial court erred in giving the uniform jury instruction for "but for" causation and in refusing to give the uniform jury instruction for "substantial factor" causation. Plaintiff's arguments on those issues are foreclosed by *Haas*, thus, we conclude that the trial court did not err.

Affirmed.